**UNITED STATES DISTRICT COURT**
**DISTRICT OF NEW MEXICO**

UNITED STATES OF AMERICA,

*Plaintiff*,

v. Civ. No. 26-2862

2,248,478.272519 USDT IN FUNDS
ASSOCIATED WITH FOUR VIRTUAL
CURRENCY ADDRESSES,

*Defendant-in-rem*.

**VERIFIED COMPLAINT FOR FORFEITURE *IN REM***

Plaintiff, United States of America, brings this complaint in accordance with Supplemental Rule G(2) of the Supplemental Rules for Certain Admiralty or Maritime Claims and Asset Forfeiture Actions, and alleges as follows:

**NATURE OF THE ACTION**

1. This is a civil action to forfeit and condemn to the use and benefit of the United States of America property constituting proceeds of violations of 21 U.S.C. §§ 841 and 846 that is subject to civil forfeiture pursuant to 18 U.S.C. § 981(a)(1)(C) and 21 U.S.C. § 881(a)(6), as well as property involved in violations of 18 U.S.C. § 1956 and therefore subject to civil forfeiture pursuant to 18 U.S.C. § 981(a)(1)(A).

**DEFENDANTS-IN-REM**

2. The *defendant-in-rem* consists of the following property (collectively, the "Defendant Property"): the entirety of funds obtained from the following virtual currency addresses.

a. TSeTQYx25SJcMqWNHUvF2Juu2HJKgmCYRT

b. TKNDSAgyBpzw2fqyrbpNdesQV1v84nN1vy

c. TBy3qXW6SnrcYxKYWtQ49ScQ74TsbaRBta

d. TNhQ2WMyqH3X2e4tCdzbA69wRgZMH8sRLw

3. Defendant Property was obtained by the Federal Bureau of Investigation ("FBI") in the District of New Mexico pursuant to seizure warrant 26-MR-1024 issued by the Honorable Barbara Evans, United States Magistrate Judge, as follows:

a. 2,248,478.272519 US Dollar Tether ("USDT").

4. Upon filing of this complaint, the United States will arrest the Defendant Property by execution of a Warrant for Arrest *in Rem* in the District of New Mexico.

5. Defendant Property is now, and during the pendency of this action will be, in the jurisdiction of this Court.

## **JURISDICTION AND VENUE**

6. The United States District Court for the District of New Mexico has subject-matter jurisdiction under 28 U.S.C. §§ 1345, 1355(a) and 1356.

7. Venue for this civil forfeiture action is proper in this district pursuant to 28 U.S.C. §§ 1355 and 1395, as acts or omissions giving rise to the forfeiture took place in this district and the property is found in this district.

8. To the extent the property was seized outside of this district, it has been brought into the district and venue is therefore proper pursuant to 28 U.S.C. § 1395(c).

## **FACTS**

*Background*

9. This civil forfeiture proceeding arises from an investigation initiated by FBI in February 2025. As part of that investigation, in March 2025, an FBI Confidential Human Source (hereinafter referred to as "CHS") arranged a controlled purchase of narcotics—specifically two

kilograms of cocaine—from an individual named Miguel Torres ("Torres"), who resides in Mexico and is associated with the Mayo faction of the Sinaloa Cartel, and others. The CHS facilitated the purchase of narcotics in exchange for cryptocurrency. The CHS received the narcotics and an FBI Undercover Employee (hereinafter referred to as "UCE") paid 30,000 USDT by transferring it to a cryptocurrency address provided by unknown individuals coordinating with Torres. This transfer was used as a "proof of concept" by Torres to consider further use of cryptocurrency to transfer cash proceeds of narcotics trafficking from the U.S. to Mexico.

10. USDT is a form of cryptocurrency referred to as a "stablecoin." USDT is designed to maintain a stable value in relation to the U.S. Dollar. Specifically, one USDT is worth approximately one U.S. Dollar.

11. The controlled purchase arranged by the CHS in March of 2025 occurred in Albuquerque, New Mexico.

*Bulk Cash Pickups*

12. In May 2025, at the direction of Torres and others, the CHS traveled to locations in Kansas and South Carolina to participate in two bulk cash pickups.

13. In May 2025, at the direction of Torres, the CHS conducted a controlled bulk cash pick up of $73,000 in Kansas. This bulk cash constituted proceeds of narcotics trafficking in violation of 21 U.S.C. §§ 841 and 846 and was furnished or intended to be furnished in exchange for controlled substances or listed chemicals in violation of the Controlled Substances Act.

14. In relation to this bulk cash pickup, Torres directed the CHS to convert the bulk cash into cryptocurrency and send the cryptocurrency to an address provided to the CHS by Torres on behalf of his drug trafficking organization ("DTO"). The address,

TSeTQYx25SJcMqWNHUvF2Juu2HJKgmCYRT, is a Tron address hereinafter referred to as Target Address #1. The FBI UCE then transferred the cryptocurrency derived from the $73,000 bulk cash pickup to Target Address #1.

15. Tron is a blockchain network built to host decentralized finance applications with high speed, scalability, and low fees. Tron operates a network protocol called TRC20 which is used for smart contracts, enabling USDT transfers to be made via the Tron blockchain.

16. Later in May 2025, the CHS was given a phone number by Torres and was instructed to contact it. The CHS contacted the phone number and was advised by an unidentified subject to meet at an address located in South Carolina. Following the call, the CHS participated in a controlled bulk cash pickup in South Carolina. The CHS picked up approximately $172,970. This bulk cash constituted proceeds of narcotics trafficking in violation of 21 U.S.C. §§ 841 and 846 and was furnished or intended to be furnished in exchange for controlled substances or listed chemicals in violation of the Controlled Substances Act.

17. Torres then directed the CHS to convert the bulk cash into cryptocurrency and send it to Target Address #1. The FBI UCE transferred cryptocurrency in the form of USDT to Target Address #1.

18. Torres does not own or control Target Address #1 and he did not receive or control the approximately 3% money laundering fee associated with the use of Target Address #1 (as described below).

19. By causing the USDT transfers described in this affidavit, Torres was able to obtain fiat currency in Mexico. Specifically, Torres caused the transfer of USDT to independent actors engaged in money laundering, who provided him with approximately the equivalent value of fiat

currency in exchange. The funds seized from Target Addresses #1-4 were not owned or controlled by Torres, but by independent actors engaged in money laundering.

*Cryptocurrency Tracing*

20. Research conducted on Target Address #1 shows that it received over 10,000,000 USDT from when it was opened on January 18, 2025, through May 21, 2025.

21. The FBI traced the funds transferred to Target Address #1 following the above-described bulk cash pickups in Kansas and South Carolina. The tracing determined that the funds were transferred to two separate addresses, TKNDSAgyBpzw2fqyrbpNdesQV1v84nN1vy, hereinafter referred to as Target Address #2, and TBy3qXW6SnrcYxKYWtQ49ScQ74TsbaRBta, hereinafter referred to as Target Address #3 just days after being transferred to Target Address #1. Based on the exact amounts sent to Target Address #1 from the above-described bulk cash pickups, approximately 97% of the total amount was transferred out to Target Address #2 and Target Address #3, which is consistent with fees associated with money laundering.

22. The FBI conducted additional blockchain analysis to determine the destinations of funds originating from the bulk cash pickups. Through one intermediary step, Target Address #1 transferred funds to TNhQ2WMyqH3X2e4tCdzbA69wRgZMH8sRLw, hereinafter referred to as Target Address #4. From March 17, 2025, to July 12, 2025, Target Address #4 received over 8,325,000 USDT from various sources.

23. Blockchain data shows that, on a prior occasion, Target Address #4 laundered approximately 30,000 USDT from entities tied to the Islamic Revolutionary Guard Corps ("IRGC"), the primary branch of the Iranian armed forces.

24. Additionally, Target Address #4 laundered over 12,000 USDT of funds stolen as part of the February 2025 ByBit Hack, a theft of approximately $1.5 billion in virtual assets from

the cryptocurrency exchange ByBit. Virtually all individuals who used cryptocurrency regularly were aware of the hack, which was conducted by a "TraderTraitor" campaign waged by the Democratic People's Republic of Korea ("North Korea"). International bounties were offered to trace and assist with stopping the laundering of these stolen funds. However, the individuals controlling Target Address #4 still conducted a series of transactions involving funds deriving from this hack, further obfuscating their source.

25. Target Addresses #1-4 are controlled by one or more Professional Money Laundering Organizations ("PMLOs") that do business with a variety of threat actors to conceal the source and destination of proceeds of unlawful activities, including "Specified Unlawful Activity" as defined in Title 18 of the United States Code.




Above: A graphical representation of interactions between the Target Addresses

26. On May 19, 2025, the FBI submitted a freeze request to Tether to freeze funds contained in Target Addresses #1-3. On May 21, 2025, Tether froze the addresses, which, at the time of the freeze, contained the following amounts:

a. Target Address #1: 550,062 USDT

b. Target Address #2: 18,919 USDT

c. Target Address #3: 200,010 USDT

On June 11, 2025, the FBI submitted a freeze request to Tether to freeze funds in Target Address #4. On June 11, 2025, Tether froze the address, which, at the time of the freeze, contained the following amount:

d. Target Address #4: 1,479,486 USDT

27. The activity described above is consistent with laundering proceeds of narcotics trafficking. Specifically, the activity is consistent with methods used by Mexican drug trafficking cartels and PMLOs to convert bulk cash drug proceeds into cryptocurrency, repatriate them to Mexico, and convert them into cash in Mexico all while concealing their nature, source, location, ownership, and control.

28. The entire contents of the cryptocurrency addresses holding the Defendant Property constitutes property "involved in" money laundering.

29. On August 11, 2026, Tether completed the transfer of seized funds from Target Addresses #1-4, totaling 2,248,478.272519 USDT, to FBI custody.

30. Following the freezing and seizure of the Defendant Property, the FBI was contacted by persons seeking information about the funds. These individuals, however, were unwilling to provide identifying information to the FBI. For example, one individual emailed the FBI via liliwangyiwu111@gmail.com, reaching out to understand the nature of the freeze. The

FBI responded, asking the claimant to provide proof of ownership, date of birth, current location, country of residence, and a photo of a government issued identification card. The claimant did not respond. The FBI followed up with another email, approximately a month later, asking the claimant to provide the requested details. The claimant did not respond to either email. The FBI confirmed that both emails were successfully delivered. The FBI obtained records from Google and determined that the account for liliwangyiwu111@gmail.com was created just a few days earlier, on July 17, 2025. The only "sent" messages contained in email records were sent to Tether and the FBI.

## CLAIM FOR RELIEF

31. The United States incorporates by reference the allegations in paragraphs 1 through 30 as though fully set forth herein.

32. 18 U.S.C. § 981(a)(1)(A) provides, in pertinent part, for the forfeiture of any property, real or personal, involved in a transaction or attempted transaction in violation of 18 U.S.C. § 1956, or any property traceable to such property.

33. 18 U.S.C. § 981(a)(1)(C) provides, in pertinent part, for the forfeiture of any property, real or personal, which constitutes or is derived from proceeds traceable to a violation of any offense constituting specified unlawful activity, as defined in 18 U.S.C. § 1956(c)(7), which includes buying, selling, or otherwise dealing in controlled substances or listed chemicals in violation of the Controlled Substances Act. *See* 18 U.S.C. §§ 1956(c)(7), 1961(1)(D); 21 U.S.C. §§ 841 and 846.

34. 21 U.S.C. § 841 provides, in pertinent part, that it is unlawful for any person to knowingly or intentionally distribute, dispense, or possess with intent to distribute or dispense, a controlled substance, including cocaine.

35. 21 U.S.C. § 846 provides, in pertinent part, that any person who attempts or conspires to commit a violation of 21 U.S.C. § 841, among other offenses, shall be subject to the same penalties as those prescribed for the offense constituting the object of the offense or conspiracy.

36. 18 U.S.C. § 1956 provides, in pertinent part, that whoever, knowing that the property involved in a financial transaction represents the proceeds of some form of unlawful activity, conducts or attempts to conduct such a financial transaction which in fact involves the proceeds of specified unlawful activity, with the intent to promote the carrying on of specified unlawful activity, or knowing that the transaction is designed in whole or in part to conceal or disguise the nature, the location, the source, the ownership, or the control of the proceeds of specified unlawful activity, shall be sentenced to a fine of not more than $500,000 or twice the value of the property involved in the transaction, whichever is greater, or imprisonment for not more than twenty years, or both.

37. 18 U.S.C. § 1956 further provides, in pertinent part, that whoever transports, transmits, or transfers, or attempts to transport, transmit, or transfer, a monetary instrument or funds from a place in the United States to or through a place outside the United States or to a place in the United States from or through a place outside the United States, knowing that the monetary instrument or funds involved in the transportation, transmission, or transfer represent the proceeds of some form of unlawful activity and knowing that such transportation, transmission, or transfer is designed in whole or in part to conceal or disguise the nature, the location, the source, the ownership, or the control of the proceeds of specified unlawful activity, shall be sentenced to a fine of not more than $500,000 or twice the value of the monetary instrument or funds involved in

the property involved in the transportation, transmission, or transfer, whichever is greater, or imprisonment for not more than twenty years, or both.

38. Defendant Property constitutes the proceeds of violations of 21 U.S.C. §§ 841 and 846 and is thus subject to forfeiture to the United States pursuant to 18 U.S.C. § 981(a)(1)(C) and 21 U.S.C. § 881(a)(6).

39. Defendant Property constitutes property involved in violations of 18 U.S.C. § 1956, and/or conspiracy to commit such offenses, and is thus subject to forfeiture to the United States pursuant to 18 U.S.C. § 981(a)(1)(A).

40. WHEREFORE: Plaintiff seeks arrest of Defendant Property and forfeiture of same to Plaintiff, determination of the validity and priority of claims of the Claimants and any Unknown Claimants to the Defendant Property, costs, and expenses of seizure and of this proceeding, and other proper relief.

Respectfully submitted,

TODD BLANCHE
Attorney General
RYAN G. ELLISON
First Assistant United States Attorney

Electronically Filed on August 29, 2026
TAYLOR HARTSTEIN
Assistant U.S. Attorney
Post Office Box 607
Albuquerque, NM 87103
(505) 224-1431

**28 U.S.C. § 1746 DECLARATION**

I am a Special Agent with the Federal Bureau of Investigation who has read the contents of the Complaint for Forfeiture *In Rem* to which this Declaration is attached; and the statements contained in the complaint are true to the best of my knowledge and belief.

I declare under penalty of perjury and the laws of the United States of America that this Declaration is true and correct, except as to matters stated on information and belief, and as to those matters, I believe them to be true.

Dated: August 29, 2026

Special Agent Tyler Derderian
Federal Bureau of Investigation